UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BRIAN PEARSON, | 4:22-CV-04018-KES |
| Plaintiffs, | ORDER GRANTING IN PART AND |
| | DENYING IN PART PLAINTIFF'S |
| vs. | MOTIONS TO QUASH |
| ROYAL CANIN USA, INC., | DOCKET NOS. 21 & 27 |
| Defendants. | |

**INTRODUCTION**

This matter is before the court on the complaint of plaintiff Brian
Pearson alleging damages caused by defendant Royal Canin USA, Inc.'s racial
discrimination and retaliation during employment, in violation of Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*  See Docket No.
1, ¶ 1.  This court has original jurisdiction over the matter under 28 U.S.C.
§§ 1331, 1332 and 1343. This opinion resolves plaintiff's two Motions to Quash
[Docket Nos. 21 and 27] which the district court referred to this magistrate
judge.  See Docket Nos. 26 & 32.

**FACTS**

Brian Pearson, an African American, began employment with Royal
Canin at their North Sioux City, South Dakota, factory in April 2019, where his
title was Quality and Food Safety Manager.  Docket No. 1, ¶ 8.  He was the only
African American manager in his district.  Id., ¶ 9. While Mr. Pearson's overall

performance at Royal Canin is at issue in this case, all parties agree that for his 2019 performance and development review, Royal Canin rated Mr. Pearson as "meets expectations."  Docket No. 1, ¶ 10; Docket No. 9, ¶ 10.

In July 2020, Royal Canin installed James Smith as Site Director (and Mr. Pearson's line manager). Docket No. 9, ¶ 11. On the heels of Mr. Smith's arrival, the company measured Mr. Pearson's performance as deficient.  Docket No. 9, ¶ 25.  A series of meetings, performance improvement plans, and disagreements allegedly ensued over the remainder of 2020, ultimately leading to Mr. Pearson's termination in January 2021.  Docket No. 1, ¶¶ 25–27, 35–46; Docket No. 9, ¶¶ 25, 37–39, 42, 47.

While still employed at Royal Canin, Mr. Pearson met with an ombudsman and submitted multiple "workplace concerns" alleging discriminatory treatment based on race.  Docket No. 9, ¶¶ 28–29, 31–32.

In his complaint, Mr. Pearson alleges that the sea change in his relationship with Royal Canin was not the consequence of poor performance, but rather a product of racial discrimination.  Docket No. 1, ¶ 55.  He further characterizes his termination as retaliation for lodging the internal complaints. Id., ¶¶ 61–63.

Mr. Pearson self-identifies as "highly qualified."  Id., ¶ 54.  He also states that "[a]lthough he has worked in manufacturing for over 25 years, [he has] never before filed a grievance or discrimination claim."  Id., ¶ 33.

Mr. Pearson's prayer for relief includes, as relevant here, back pay and front pay.  Id., ¶¶ 58, 64.

During discovery, Royal Canin sought documentation from Mr. Pearson related to his post-termination employment and income.  Docket No. 24-1 at pp. 10–11.  While Mr. Pearson provided some responsive information, Royal Canin discovered through its own investigation that Mr. Pearson omitted at least one employment—at Seaboard Triumph Foods.  Docket No. 24-2, ¶ 5.  It also learned that where Mr. Pearson had stated he was then working for "Planning Council," the correct name of the employer was Siouxland Interstate Metropolitan Planning Council (SIMPCO).  Docket No. 24 at pp. 3–4.

"On March 9, 2023, [Royal Canin] notified [Mr. Pearson] that it intended to serve subpoenas seeking [Mr. Pearson's] employment records from Seaboard and SIMPCO."  Id. at p. 4.  On March 15, Mr. Pearson noticed his objection to Royal Canin.  Id. at p. 5.  On March 16, Seaboard notified Royal Canin that the documents subpoenaed were ready.  Royal Canin asked Seaboard to hold off on sending the documents, pending a meet and confer between the parties.  Id. On March 20, the parties participated in a meet and confer call where Royal Canin agreed to "hold off on the subpoenas 'for now.'"  Id.  Mr. Pearson produced his Seaboard W-2 for Royal Canin.  Docket No. 34-2 at p. 226 (Pearson Dep. 226:17–22).  But the timeline of Mr. Pearson's Seaboard employment appears to still be a point of confusion, if not contention.  Docket No. 24-2, ¶¶ 12, 18; Docket No. 34-2 at p. 282 (Pearson Depo. 211:4–6); Docket No. 23, Ex. B at p. 1.

Upon further legal research and consideration of Mr. Pearson's omissions, Royal Canin decided to move forward with the subpoenas of some of

Mr. Pearson's post-termination employers, resulting in plaintiff's first motion to quash.  Docket No. 21; Docket No. 24 at p. 5; Docket No. 22 at p. 2; Docket No. 33 at p. 4.

While the first motion was pending, Royal Canin conducted Mr. Pearson's deposition.  Docket No. 33 at p. 4.  During the deposition, Royal Canin learned that Mr. Pearson also failed to disclose one of his prior employers, K-Flow.  Id. at p. 5.  Royal Canin previously requested through interrogatories the identities of Mr. Pearson's employers from January 1, 2012, to present.  Docket No. 33 at p. 5; Docket No. 24 at p. 3.  Explaining his failure to disclose Seaboard and K-Flow, Mr. Pearson testified that the information was "irrelevant in relation to the case or claim of the defenses." Docket No. 34-2 at p. 289 (Pearson Dep. 223:5–6).

At his deposition, Mr. Pearson's testimony returned to his performance record and industry reputation.  Docket No. 33 at p. 7.  When discussing the Royal Canin performance improvement plan, Mr. Pearson testified, "[s]o I denied that - that memo.  It came out of left field.  I've never seen anything like this in my career ever." Id. (Pearson Dep. 47:10–12).  Also: "I said I'm not going to sign the document.  This is not reflective.  I had never had anything like this before." Id. (Pearson Dep. 124:5–8).  Referencing his reputation and qualifications, Mr. Pearson testified "I have a solid track record.  I've been in the area for a long time.  People know who I am." Id. (Pearson Depo. 191:25–192:2).  Also: "I've been very successful.  I've had multiple -- hundreds of

audits and been very successful in audits.  And it just -- the process and what took place was - it was not a fair process." Id. (Pearson Depo. 252:20–253:1).

Royal Canin determined that due to Mr. Pearson's additional employment omission, and the fact that "[Mr. Pearson] placed his prior and subsequent employment records and his credibility . . . squarely at issue in this case," it was necessary to subpoena Mr. Pearson's prior employers.  Id. at p. 2.

For both the prior[1] and subsequent employers, Royal Canin seeks the following in its subpoenas:

1.    Compensation and records including pay checks, Forms 1099 and W-2, commission checks, pay statements, commission statements, closing statements, and other documents which reflect amount(s) earned by Brian Pearson while employed by the Company.

2.    All personnel file records, including all training records and/or certification records, safety investigations, performance evaluations, and employment recognition awards, maintained on Brian Pearson while employed by the Company.

3.    All documents and communications relating to or evidencing the compensation, incentive pay, bonuses, stock, stock options and any other types of financial renumeration provided to Brian Pearson while employed by the Company.

4.    All warnings, reprimands, communications and/or other documents identifying discipline, performance deficiencies and/or policy or procedure violations, which have been issued to Brian Pearson while employed by the Company.

5.    All documents and communications relating to any complaint, grievance, or workplace concern raised by Brian Pearson with respect to his employment with the Company.

Docket No. 23-1, Ex. A at p. 4; Docket No. 29-1 at p. 22.

---

[1] Although not named in Mr. Pearson's second Motion to Quash, this court includes K-Flow in its analysis of prior employer subpoenas.  See Docket No. 28 at p. 1; Docket No. 33 at pp. 1–2 & n.2.

## DISCUSSION

### A.    Discovery, Generally.

Discovery "is the formal process of exchanging information between the parties about the witnesses and evidence they'll present at trial."[2]  The purpose of discovery is to "help litigants gain an understanding of the key persons, relationships, and evidence in a case and . . . the veracity of those persons and purported evidence."  Sentis Group, Inc. v. Shell Oil Co., 763 F.3d 919, 926 (8th Cir. 2014).  Devices used between parties to exchange information include depositions, interrogatories, requests for production, physical and mental examinations, and requests for admissions.  See FED. R. CIV. P. 27–36.  When a party to an action requires discovery from a non-party, the Federal Rules of Civil Procedure allow the party to serve a subpoena on the non-party.  See generally FED. R. CIV. P. 45.  A subpoena can command the non-party to attend a deposition or produce relevant documents.  FED. R. CIV. P. 45(a)(1); see also FED. R. CIV. P. 30(a)(1), 34(c).

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  This scope of discovery applies to information sought in a Rule 45 subpoena.  Pointer v. DART, 417 F.3d 819, 821 (8th Cir. 2005).

---

[2] AMERICAN BAR ASSOCIATION, https://www.americanbar.org/groups/ public_education/resources/law_related_education_network/how_courts_work /discovery/ (last visited August 23, 2023).

The spectrum of relevance under Rule 26 is broader than what is admissible at trial; information sought in discovery need only be "reasonably calculated to lead to the discovery of admissible evidence." Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC, 784 F.3d 1183, 1198 (8th Cir. 2015) (quotation omitted).

Whether requested discovery is proportional to the needs of the case is a fact-intensive inquiry that considers:

> [T]he importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1).

Despite its breadth, the scope of discovery is not limitless. A court must limit discovery when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

When requested discovery "does not reasonably bear upon the issues in the case," the seeking party must provide "[s]ome threshold showing of relevance." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).

In the instant case, Mr. Pearson seeks to quash Royal Canin's subpoenas to his prior and subsequent employers on the grounds that the information sought is irrelevant.[3]  Docket No. 22 at p. 2; Docket No. 28 at pp. 2–4.  For Mr. Pearson's subsequent employers, he further argues that the subpoenas "seek[ ] information that [Royal Canin] has already received from Mr. Pearson, or could have asked him for rather than subpoenaing his employer."  Docket No. 22 at p. 2.

## B.    Mr. Pearson's Standing

The court notes initially that Mr. Pearson has standing to bring these motions.  Generally, only the non-party served with a subpoena has standing to quash that subpoena.  Colonial Funding Network, Inc. v. Genuine Builders, Inc., 326 F.R.D. 206, 212 (D.S.D. 2018) (citations omitted).  An exception to that rule exists "when the party seeking to challenge the subpoena has a personal right or privilege" in the information sought.  Id.  An example is the personal right found in one's private financial records.  Id.

Just as citizens have an interest in "preserving the confidentiality" of their finances, employees, too, have an interest in protecting their personnel files from public view.  Detroit Edison Co. v. NLRB, 440 U.S. 301, 318 n.16

---

[3] In the District of South Dakota, "a party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute."  D.S.D. Local R. 37.1.  This court finds that Mr. Pearson, through the affidavits of his counsel and supporting attachments, has complied with this requirement.  See Docket Nos. 23, 23-2, 23-3, 29, and 29-2.

(1979); see also NASA v. Nelson, 562 U.S. 134, 156 (2011).  Personnel files

contain sensitive information such as "alimony and child support garnishment,

tax records . . . drug test results. . . . and critical performance evaluation[s]."

In re Xarelto (Rivaroxaban) Prods. Liab. Litig., 312 F.R.D. 32, 37 (E.D. La.

2016) (quotation omitted).  District courts in this circuit have routinely located

a personal right in employment records.  See, e.g., Wilbur-Ellis Co., LLC v.

Gompert, No. 8:21-cv-340, 2022 U.S. Dist. LEXIS 227155, at *7 (D. Neb. Dec.

16, 2022), aff'd, 2023 U.S. Dist. LEXIS 11961 (D. Neb. Jan. 24, 2023) (citations

omitted).  This court does, as well.  If the existence of a personal right co-

extends with a citizen's reasonable expectation of privacy, such a right must

attach to employment records.  Cf. Lureen v. Doctor's Assocs., No. 4:17-CV-

04016-LLP, 2017 U.S. Dist. LEXIS 152615, at *15 (D.S.D. Sep. 20, 2017).

Because Mr. Pearson has a personal right in his employment records, he has

standing to quash the subpoena of those records.

But Mr. Pearson's standing only gets him into the courthouse.  A privacy

interest in personnel records must yield to discovery when the needs of the

litigation outweigh the need for privacy.  In re Motion to Unseal Elec.

Surveillance Evidence, 965 F.2d 637, 641 (8th Cir. 1992).

**C.     The Disputed Subpoenas**

For the motions before it, this court consolidates the disputed discovery

into three categories: (1) wage and benefits information from prior employers;

(2) wage and benefits information from subsequent employers; and (3) non-

9

wage and benefits employee files from prior employers and subsequent employers.  Each will be discussed in turn.

     **1.    Whether Royal Canin Should be Permitted to Subpoena Prior Employers for Wage and Benefits Information.**

Mr. Pearson seeks to quash subpoenas of wage and benefits information from prior employers on the grounds that the information is irrelevant.  Docket No. 28 at p. 3.  Although this court confirms that Royal Canin is seeking such information, see, e.g., Docket No. 29-1 at p. 22, Royal Canin does not appear to make any specific argument as to why such information is relevant.  See generally Docket Nos. 24, 33.

Royal Canin asserts that "[n]ot allowing RC to discover Plaintiff's records from prior and subsequent employers . . . would greatly prejudice RC's ability to defend against Plaintiff's damages claims at trial."  Id. at p. 11.  If the meaning of "Plaintiff's records" within this argument includes wage and benefits information from prior employers, that inclusion is unfounded.

"The purpose of a back pay award is to make whole the employee who has been discriminated against as the result of an unfair labor practice." Woodline Motor Freight, Inc. v. NLRB, 972 F.2d 222, 224 (8th Cir. 1992) (quotation omitted).  Back pay "is calculated based upon the difference between the value of the compensation the plaintiff would have been entitled to had he remained employed by the defendant and whatever wages he earned . . . from the date of termination until [generally] the date of reinstatement or judgment." Clark v. Matthews Int'l Corp., 639 F.3d 391, 396 (8th Cir. 2011) (citations and internal quotation marks omitted).

10

Front pay is "the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible." <u>Kramer v. Logan Cty. Sch. Dist. No. R-1</u>, 157 F.3d 620, 626 (8th Cir. 1998) (citations omitted).  Front pay allows for the payment of what an employee would have earned but for an employer's wrongful act—paid until the employee finds a comparable position.  <u>Briseno v. Cent. Tech. Cmty. Coll. Area</u>, 739 F.2d 344, 348 (8th Cir. 1984).

"A Title VII claimant seeking back pay or front pay . . . has a duty to mitigate those damages by exercising reasonable diligence to locate other suitable employment." <u>Excel Corp. v. Bosley</u>, 165 F.3d 635, 639 (8th Cir. 1999) (citing <u>EEOC v. Delight Wholesale Co.</u>, 973 F.2d 664, 670 (8th Cir. 1992)).  Title VII courts are statutorily required to reduce any back pay award by a claimant's post-termination earnings.  42 U.S.C. § 2000e-5(g) (2023).  While back pay is statutory, front pay is an equitable remedy.  <u>Smith v. World Ins. Co.</u>, 38 F.3d 1456, 1466 (8th Cir. 1994) (citation omitted).  Under Eighth Circuit precedent, front pay awards are also reduced by amounts earned in mitigation.  <u>Briseno</u>, 739 F.2d at 348.

Front pay and back pay awards are further reduced by amounts that could have been earned had the claimant exercised "reasonable diligence" in seeking post-termination employment.  42 U.S.C. § 2000e-5(g); <u>Excel Corp.</u>, 165 F.3d at 639.  The hypothetical employment in this "reasonable diligence" analysis is one that is "substantially equivalent" to the claimant's terminated position.  <u>Mathieu v. Gopher News Co.</u>, 273 F.3d 769, 783–84 (8th Cir. 2001)

11

(citations omitted).  A "substantially equivalent" position is one that offers a "virtually identical" compensation package.  Baker v. John Morrell & Co., 263 F. Supp. 2d 1161, 1180 (N.D. Iowa 2003) (quoting Sellers v. Delgado Coll., 902 F.2d 1189, 1193 (5th Cir. 1990)).

As should be apparent from the above discussion, whether determining back pay or front pay, the financial focus remains on what the claimant earned *at the party employer and subsequent employers*.  Because *prior* wages and benefits do not inform either analysis, that information is irrelevant.

Royal Canin cites to EEOC v. Randall Ford, Inc., which relies on Walker v. Nw. Airlines Corp., for the proposition that "both past and post-termination wage . . . records are highly relevant to the issue of mitigation and to the computation of damages."  298 F.R.D. 573, 575 (W.D. Ark. 2014) (quoting No. Civ. 00-2604, 2002 U.S. Dist. LEXIS 27592, at *6 (D.Minn. Oct. 28, 2002)); Docket No. 33 at p. 8.  But the court in Walker never explains why past wage records are highly relevant to such matters, and neither does Royal Canin. 2002 U.S. Dist. LEXIS 27592, at *6; see generally Docket Nos. 24, 33.  It is Royal Canin's "initial burden to demonstrate the relevancy" of prior wage and benefits documents.  Colonial Funding Network, 326 F.R.D. at 212.  That burden has not been satisfied.  The court grants Mr. Pearson's motion to quash the subpoenas to the extent they seek wage and benefit information from employers which predated Mr. Pearson's employment with Royal Canin.

12

### 2. Whether Royal Canin Should be Permitted to Subpoena Post-Termination Employers for Wage and Benefits Information.

Royal Canin seeks wage and benefits information from subsequent employers for the purpose of assessing Mr. Pearson's damages claims. Docket No. 24 at pp. 9–10; Docket No. 33 at 10–11. While Mr. Pearson appears to agree that such information is relevant, he argues that the subpoenas "seek information that Defendant has already received from Mr. Pearson, or could have asked him for rather than subpoenaing his employer[s]." Docket No. 22 at p. 2. Royal Canin counters that given Mr. Pearson's history of incomplete responses, it would prefer to receive a complete file from the employers. Docket No. 24 at 11–12.

As stated in Section C(1), *supra*, assessing either front pay or back pay necessarily involves understanding the claimant's post-termination earnings. Clark, 639 F.3d at 396; Briseno, 739 F.2d at 348. Simple wages are only one form of compensation considered. In Hartley v. Dillard's, Inc., the Eighth Circuit collected a veritable laundry list of forms of compensation recoverable in discrimination cases. 310 F.3d 1054, 1062 (2002) (examples include "lost 401(k) contributions . . . recovery of vacation, sick leave/funeral leave . . . tuition aid program" and many more). And like regular wages, post-termination benefits will reduce any award of front pay or back pay. See Brunnemann v. Terra Int'l, Inc., 975 F.2d 175, 179 & n.7 (5th Cir. 1992); Catlett v. Mo. State Highway Comm'n, 627 F. Supp. 1015, 1018 (W.D. Mo. 1985). It is axiomatic, then, that a defending employer has the right to discover any form of compensation which might serve to mitigate such

13

damages.  See Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., No. 4:20-CV-04058-KES, 2023 U.S. Dist. LEXIS 12282, at *19 (D.S.D. Jan. 23, 2023) ("[F]inancial data related to a party's claimed damages is relevant and discoverable.").

In the instant case, Mr. Pearson argues that the subpoenas for post-termination wage and benefits information ask for information already provided to Royal Canin, and that anything missing can be supplied by Mr. Pearson. Docket No. 22 at p. 2.  The issue with Mr. Pearson's stance is that he has already demonstrated comfort with withholding responsive information. Docket No. 34-2, pp. 289–92 (Pearson Dep. 223:2–226:22).

When a party objects to an interrogatory, they are permitted to withhold information so long as they state their objection with specificity.  FED. R. CIV. P. 33(b)(4-5).  Because of this specificity requirement, boilerplate language that "merely states the legal grounds for the objection" has no effect.  See generally Liguria Foods, Inc. v. Griffith Labs, Inc., 320 F.R.D. 168 (N.D. Iowa 2017) (quote at n.1) (citation omitted).  Examples are objections to relevancy or proportionality that make no effort to explain their reasoning.  Id. at 186. When a boilerplate objection accompanies a response to an interrogatory, the inclusion of "without waiving" language does not preserve the underlying objection, because the underlying objection is defective.  Id. at 187 ("[T]he idea that such general or boilerplate objections preserve any objections is an urban legend.") (quotations omitted).

In reply to an interrogatory requesting post-termination employment details, Mr. Pearson asserted a boilerplate objection for relevancy and proportionality—but also provided responsive information—subject to "without waiving" language.  Docket No. 24-1 at p. 5.  That responsive information, it turns out, omitted entirely one of Mr. Pearson's post-termination employments—at Seaboard.  Docket No. 24 at p. 4.  Mr. Pearson also gave the incomplete name of his current employer—SIMPCO—calling it simply "Planning Council."  Id. at p. 3.  When asked at his deposition why, he stated "It's just what we call it."  Docket No. 34-2 at p. 269 (Pearson Dep. 203:18–20).  When asked why he did not disclose his Seaboard job, Mr. Pearson stated that the information was "irrelevant in relation to the case or claim of the defenses."  Docket No. 34-2 at p. 289 (Pearson Dep. 223:5–6).

It is not for Mr. Pearson to "dictate the scope of discovery based on [his] own view of the parties' respective theories of the case."  Sentis Group, Inc., 763 F.3d at 925.  Despite his boilerplate objection to the interrogatory, Mr. Pearson provided a response.  Mr. Pearson gave no indication that any employer was withheld from the response and Royal Canin only discovered it due to their own investigatory diligence.  Docket No. 24 at p. 4.  Responses are presumed to be complete absent specific grounds for an objection.  FED. R. CIV. P. 33(b)(3–4).  This court is bound to construe the rules of discovery "to secure the just, speedy, and inexpensive determination of every action."  Herbert v. Lando, 441 U.S. 153, 177 (1979) (quoting FED. R. CIV. P. 1). Requiring Royal Canin to go through Mr. Pearson for post-termination wage and benefits

15

information, when completeness is not assured, would be antithetical to that command.  In any event, parties may choose to conduct discovery through whatever vehicle and from parties or nonparties as they like—there is no requirement that discovery proceed in any predetermined sequence such as exhausting one's efforts with a party before turning to nonparties.  <u>See</u> F<span style="font-variant:small-caps">ED</span>. R. C<span style="font-variant:small-caps">IV</span>. P. 26(d)(3) (there is no requirement that methods of discovery be used in a certain sequence or from particular persons).

As a practical matter, it is Mr. Pearson's employers who are in the best position to provide a complete portfolio of Mr. Pearson's wages and individualized benefits.  Mr. Pearson argues that Royal Canin "could have asked him" for such information "rather than subpoenaing his employer." Docket No. 22 at p. 2.  But no rule exists that discovery must be sought from a party first.  <u>Randall Ford, Inc.</u>, 298 F.R.D. at 575.  And while this court must, *sua sponte*, protect a third party from "unreasonably cumulative or duplicative" requests, or those that "can be obtained from some other source that is more convenient, less burdensome, or less expensive," F<span style="font-variant:small-caps">ED</span>. R. C<span style="font-variant:small-caps">IV</span>. P. 26(b)(2)(C)(i), such objections are for the subpoenaed person to make, not Mr. Pearson.  <u>See</u> F<span style="font-variant:small-caps">ED</span>. R. C<span style="font-variant:small-caps">IV</span>. P. 45(d).

### 3. Whether Royal Canin Should be Permitted to Subpoena Prior and Subsequent Employers for Non-Wage and Benefits Employee Files [hereinafter "Employee Files"]

Royal Canin seeks Mr. Pearson's employee files for the purposes of (1) calculating damages; (2) impeachment; (3) establishing a habit of lodging discrimination complaints; and (4) validating Royal Canin's stated reason for

16

terminating Mr. Pearson.  Docket No. 24 at pp. 7–12; Docket No. 33 at pp. 6–12.  Mr. Pearson objects on relevancy grounds and because "Defendant cannot identify any relevant information they cannot get from Plaintiff."  Docket No. 22 at pp. 2–5 (quote at 5).

### a.    Damages Calculations

Royal Canin seeks employee files from Mr. Pearson's prior and subsequent employers to assist in calculating damages.  Docket No. 24 at 7–10; Docket No. 33 at pp. 10–11.

### i.    Prior Employers

When calculating front pay, a court must predict how long the claimant would have remained in their position but for the employer's unlawful conduct. Dollar v. Smithway Motor Xpress, Inc., 710 F.3d 798, 809 (8th Cir. 2013). While "[s]ome degree of speculation is inescapable," courts have developed several factors to assist in making that determination.  Id.; see Ogden v. Wax Works, Inc., 29 F. Supp. 2d 1003, 1011–15 (N.D. Iowa 1998) (collecting cases and factors).

Two considerations the court in Ogden v. Wax Works, Inc. made when estimating such longevity were the party employer's satisfaction with the claimant, and the claimant's satisfaction with her job.  29 F. Supp. 2d at 1015, 1017.  In the Eighth Circuit, courts also rely on duration of prior employment to inform the analysis.  Dollar, 710 F.3d at 810.  For example, in Standley v. Chilhowee R-IV School District, the court noted the probationary nature of the claimants' underlying one-year contracts, and the unlikelihood that their

17

employer school district would have extended them for any reason.  5 F.3d 319,
322, 325 (8th Cir. 1993); see also Standley v. Chilhowee R-IV Sch. Dist., No.
89-0779-CV-W-2, 1992 U.S. Dist. LEXIS, at *3 (W.D. Mo. Jan. 7, 1992); Dollar,
710 F.3d at 810 (weighing nine and one-year employments of claimant).

  Standley exemplifies why knowing only the duration of past
employments, but not the reason for their termination, is unhelpful.  Consider
two hypotheticals:  In the first, a claimant who wants a steady job suffers from
a string of three plant closures in the span of three years.  In the second, the
claimant habitually works for nine months and then travels the world for three.
For both hypotheticals, the duration of employment is the same.  Only context,
then, will assist a court in distilling meaning from that duration that is useful
for the front pay analysis.  Because duration of past employment is expressly
discoverable, Dollar, 710 F.3d at 810, the underlying context must also be.  It
is true that a claimant can supply that context through deposition testimony.
See, e.g., Docket No. 34-2 at pp. 270–76 (Pearson Dep. 204:4–210:24).  But as
the present action demonstrates, minds can differ over the reasons for a
termination.  Docket No. 1, ¶ 57; Docket No. 9, ¶ 57.  For a court to make an
informed front pay determination, it must weigh evidence gleaned from both
the claimant and previous employers.  Cf. FTC v. Lundbeck, Inc., 650 F.3d
1236, 1243 (8th Cir. 2011) ("It is precisely the job of the district court to
consider the evidence offered by both sides and render a judgment.") (citation
omitted).

In the instant case, Mr. Pearson argues that any attempt to discover propensity evidence "of the plaintiff's performance history" is barred by the Federal Rules of Evidence.  Docket No. 28 at p. 3 (quoting Rajaravivarma v. Bd. of Trs. for Conn. State Univ. Sys., 272 F.R.D. 315, 318 (D. Conn. 2011).  But in the context of front pay, the purpose of discovery is to estimate Mr. Pearson's intent to remain employed.  Ogden, 29 F. Supp. 2d at 1013-14.  Propensity evidence is admissible to prove intent or plan.  United States v. Reed, 978 F.3d 538, 543 (8th Cir. 2020) (quoting FED. R. EVID. 404(b)(2)).  And so, this discovery clears Rule 26's easy hurdle.  The rules of evidence will determine whether this evidence is admissible, but alleged inadmissibility is not a bar to discovery.

## ii.    Subsequent Employers

Royal Canin seeks employee files from subsequent employers to determine whether any potential front or back pay should be tolled.  Docket No. 9 at p. 10.

When a Title VII claimant locates a substantially equivalent interim position, their continuing duty to mitigate damages includes maintaining the new position.  Delight Wholesale Co., 973 F.2d at 670 (citing Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1277 (4th Cir. 1985)).  So, when the claimant voluntarily leaves the position, they have renounced their duty to mitigate, and the period for back pay tolls.  Maverick Transp., LLC v. U.S. Dep't of Labor, 739 F.3d 1149, 1157 (8th Cir. 2014) (citations omitted); see also Thorson v. Gemini, Inc., 96 F. Supp. 2d 882, 891–92 (N.D. Iowa 1999) (applying same rationale to

front pay).  When a claimant "leaves his job for justifiable reasons," such as "unreasonable working conditions," damages are not subject to tolling. Maverick Transp., LLC, 739 F.3d at 1157 (quotations omitted).

In the instant case, Mr. Pearson obtained two separate employments subsequent to his time at Royal Canin: Seaboard and SIMPCO.  Docket Nos. 34-2 at pp. 21, 35 (Pearson Dep. 197:3–20, 211:4–11).  Pearson's termination at Seaboard occurred on October 5, 2021, and his hiring date at SIMPCO was in January 2022.  Id.  The voluntariness of Pearson's Seaboard termination will directly impact the calculation of damages during this 3-4 month gap between employment. Maverick Transp., LLC, 739 F.3d at 1157.

At his deposition, Mr. Pearson testified that he was involuntarily terminated from Seaboard because "the new general manager wanted to go in a different direction."  Docket No. 34-2 at p. 40 (Pearson Dep. 216:8–13).  While this court has no reason not to accept  Mr. Pearson's testimony, the trial court will need to synthesize Mr. Pearson's testimony with evidence supplied by Seaboard.  See Section C(3)(a)(i), *supra*.  In the interest of that informed analysis, it behooves the court to authorize discovery assessing the reason for Mr. Pearson's leaving Seaboard's employment.  Sentis Group, Inc., 763 F.3d at 926. [4]

---

[4] Some courts also find a failure to mitigate when the reason for an employee's involuntary termination is due to not "act[ing] reasonably and responsibly in accordance with employer rules."  Brady, 753 F.2d at 1277; Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 936 (5th Cir. 1996) (adopting Brady's reasoning).  The logic behind these holdings is that Title VII's back pay objectives do not require a "defendant to pay for the misconduct of a claimant in subsequent employment."  Brady, 753 F.2d at 1277.

### b.  Impeachment

Because Mr. Pearson has, on multiple occasions, invoked his
performance history and reputation in industry, Royal Canin argues it is
entitled to broad discovery for purposes of impeachment on these topics.
Docket No. 33 at pp. 6–10.

"The scope of Rule 26 includes the discovery of information sought for
impeachment purposes." Oyen v. Land O'Lakes, Inc., No. CIV-07-4112, 2009
U.S. Dist. LEXIS 10169, at *17 (D.S.D. Feb. 10, 2009).  Such discovery "is
constrained in [the] same manner as other discovery -- it must be reasonably
likely to lead to admissible evidence." Bolia v. Mercury Print Prods., No. 02-
CV-6510T, 2004 U.S. Dist. LEXIS 22730, at *5 (W.D.N.Y. Oct. 28, 2004)
(citation omitted).

In the Eighth Circuit, courts analyze Title VII discrimination claims
"under the burden-shifting framework in McDonnell Douglas Corp. v. Green."
Yang v. Robert Half Int'l, Inc., ___ F.4th ___, 2023 U.S. App. LEXIS 21984, at
*20 (8th Cir. Aug. 22, 2023) (citing 411 U.S. 792 (1973); Lake v. Yellow
Transp., Inc., 596 F.3d 871, 873 n.2 (8th Cir. 2010)).

---

This court need not decide whether the trial court will adopt, or even
consider Brady's reasoning.  Because it is not unreasonable to predict such a
development—given the Eighth Circuit's favorable treatment of Brady on
related grounds, Delight Wholesale Co., 973 F.2d at 670, permitted discovery
under this section includes not only the question of voluntariness, but also, in
the event Mr. Pearson's termination was indeed involuntary, the employer's
justification.  See Chavis Van & Storage, 784 F.3d at 1198 (discovery need only
be "*reasonably* calculated to lead to the discovery of admissible evidence")
(emphasis added).

Under that framework, a plaintiff establishes a prima facie case of discrimination by showing "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." Faulkner v. Douglas Cty., 906 F.3d 728, 732 (8th Cir. 2018) (quotation omitted).  If a prima facie showing is made, "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for discharging the employee."  Floyd-Gimon v. Univ. of Ark. for Med. Scis. ex rel. Bd. of Trs. of Univ. of Ark., 716 F.3d 1141, 1149 (8th Cir. 2011) (quotation omitted).  If the employer provides a facially legitimate reason, the claimant is then "afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext."  McDonnell Douglas Corp., 411 U.S. at 804.

Useful to this analysis are facts concerning the claimant's performance during their employment with the defendant.  Cf. Wensel v. State Farm Mut. Auto. Ins. Co., 218 F. Supp. 2d 1047, 1072 (N.D. Iowa 2002) ("Positive performance evaluations in the face of an adverse employment action can provide proof of pretext.").  Less helpful are facts concerning the claimant's prior work performance.  Cf. Noman v. Fed. Express Corp., No. DKC 2008-0101, 2009 U.S. Dist. LEXIS 38470, at *10 (D. Md. May 1, 2009) (claimant's certificates of "outstanding service excellence" at prior employer "irrelevant to whether Plaintiff performed at a level that met *Defendant's* legitimate expectations.") (emphasis in original).  But courts considering pretext may use "evidence of a strong employment history" to determine "whether the record as

a whole establishes a genuine issue of material fact." <u>Guimaraes v. SuperValu,</u> <u>Inc.</u>, 674 F.3d 962, 975 (8th Cir. 2012).

Prior Title VII lawsuits are generally inadmissible to evince a claimant's "propensity to file baseless discrimination suits." <u>Mathis v. Phillips Chevrolet,</u> <u>Inc.</u>, 269 F.3d 771, 776 (7th Cir. 2001). But the Eighth Circuit will admit such evidence for non-propensity purposes—only when certain factors are met. These factors ask whether the litigation is "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the [event at issue]." <u>Batiste-Davis v. Lincare, Inc.</u>, 526 F.3d 377, 380 (8th Cir. 2008) (alteration in original); <u>see also id.</u> (citing <u>Gastineau v. Fleet Mortgage Corp.</u>, 137 F.3d 490, 495–96 (7th Cir. 1998) ("three suits against former employers filed within five years of current case were sufficiently close in time to be admitted as proof of why supervisor kept notes about plaintiff's work, rather than proof of plaintiff's litigiousness")).

Royal Canin seeks to discover evidence for the purpose of conducting impeachment by contradiction. Docket No. 33 at pp. 6–10; <u>See</u> <u>United States</u> <u>v. McClintic</u>, 570 F.2d 685, 691 (8th Cir. 1978). "Impeachment by contradiction" is the act of "attack[ing] the credibility of witnesses by the presentation of evidence showing that facts asserted or relied upon in their testimony are false." <u>Wegener v. Johnson</u>, 527 F.3d 687, 691 (8th Cir. 2008) (citation omitted). "Impeachment by contradiction is a well-recognized way of attacking a witness's credibility." <u>United States v. Scott</u>, 243 F.3d 1103, 1107

(8th Cir. 2001).  Federal courts confronted with the issue "have routinely determined" that extrinsic evidence may be used "to demonstrate that a statement made during direct examination was false."  United States v. Rojas, No. CR14-4015-MWB, 2014 U.S. Dist. LEXIS 199993, at *7–10 (N.D. Iowa Nov. 26, 2014) (citations omitted) (collecting cases).

In the instant case, Mr. Pearson stated in his complaint that "[a]lthough he has worked in manufacturing for over 25 years, Mr. Pearson ha[s] never before filed a grievance or discrimination claim."  Docket No. 1, ¶ 33. But in a brief supporting his motion to quash, Mr. Pearson states:

> [E]ven if Plaintiff had made complaints of discrimination or workplace grievances at other jobs (which he has not), such complaints would not make it any more or less likely that his complaints while employed by Defendant were valid.  Defendant's only purpose in seeking this information is the vague hope they can find something to paint Plaintiff as a "problem employee."

Docket No. 22 at p. 4.

Mr. Pearson also stated in his complaint that he "was a successful and highly qualified employee."  Docket No. 1, ¶ 54.  At his deposition, Mr. Pearson explained, without prompting, that in his entire career, he has never faced a performance improvement plan.  Docket No. 33 at p. 7 (Pearson Dep. 47:10–12, Pearson Dep. 124:5–8).  He also reiterated his qualifications, stating "I have a solid track record.  I've been in the area for a long time.  People know who I am." Id. (Pearson Depo. 191:25–192:2).  Also: "I've been very successful.  I've had multiple -- hundreds of audits and been very successful in audits." Id. (Pearson Depo. 252:20–253:1).  But in a brief supporting his motion to quash, Mr. Pearson states "Plaintiff's performance in his prior jobs does not make it

24

any more or less likely that he was discriminated against at Royal Canin, and does not say anything about his job performance while he was there." Docket No. 28 at p. 4.

Mr. Pearson has put Royal Canin on notice that he is likely to introduce these very histories as his case progresses. Cf. Boyle's Famous Corned Beef Co. v. NLRB, 400 F.2d 154, 162 (8th Cir. 1968) ("The complaint . . . set[s] the standard of relevance which shall govern the proceedings at the hearing.") (quotation omitted). And should Mr. Pearson's credentials be found as impeccable as alleged, they may present a bar to summary judgment. Guimaraes, 674 F.3d at 975. Even if the issues of prior grievances or professional standing are collateral to the elements of his Title VII claim, it is Mr. Pearson who was "the master of his complaint." Hughbanks v. Dooley, 788 F. Supp. 2d 988, 1000 (D.S.D. 2011) (quotation omitted). Mr. Pearson's complaint put his professional history and prior claims at issue. He reiterated and developed these claims at his deposition. "It is fair to assume" that deposition testimony "gives a preview of what is to come at trial." Flowers v. Owens, 274 F.R.D. 218, 221 (N.D. Ill. 2011).

Because Mr. Pearson has put the issues of his professional performance and history of claims at issue, it is Royal Canin's right to investigate the authenticity of his assertions. Sentis Group, Inc., 763 F.3d at 926.

### c. Establishing Habit / Validation of Mr. Pearson's Termination

One of Royal Canin's legal theories is that Mr. Pearson "complained about discrimination . . . as an effort to shift responsibility from himself or to

insulate himself from imminent discharge." Docket No. 24 at p. 10.  To

buttress this theory, Royal Canin would like to discover whether Mr. Pearson

"followed the same pattern of immediately alleging discrimination or

unfairness" when confronted with negative feedback at other employers.  Id. at

pp. 10–11.  Should Royal Canin find what it seeks, it hopes to offer such

evidence to demonstrate Mr. Pearson's "habit"—as that word is understood

under Federal Rule of Evidence 406.  Id. at p. 11.

On a different tack, Royal Canin asserts that Mr. Pearson's employee files

"are also relevant to the issue of whether Plaintiff was meeting Defendant's

legitimate expectations during his employment."  Docket No. 33 at 12.  The

court interprets this argument to suggest that if Mr. Pearson performed poorly

at other employers, the stated reason for Mr. Pearson's termination at Royal

Canin was not mere pretext.

This court has already sanctioned the discovery of Mr. Pearson's prior

performance, as well as any history of grievances, or claims of discrimination.

See Section C(3)(b), *supra*.  The discovery Royal Canin seeks in support of its

additional theories is no different.  Because the court already found a

reasonable foundation for the discovery—impeachment and relevance to

pretext—it need not determine whether habit or propensity is independently

reasonable.  These are questions of admissibility best left to the trial court.

United States v. Jones, 687 F.2d 1265, 1267 (8th Cir. 1982).

**D.    Scope of Discovery.**

With an eye on assuring that only relevant evidence is sought, it is this court's duty to limit discovery from Mr. Pearson's employers "to encompass a reasonable time period both before and after the discriminatory event being alleged." Sallis v. Univ. of Minn., 408 F.3d 470, 478 (8th Cir. 2005); see also Cone v. Rainbow Play Sys., No. CIV 06-4128, 2009 U.S. Dist. LEXIS 62527, at *5–6 (D.S.D. July 21, 2009) (collecting cases). This court holds that discovery into Mr. Pearson's employment records five years before his start date at Royal Canin is reasonable for both parties. The court calculates the start date of such discovery to be April of 2014. See Docket No. 1, ¶ 8. Due to the relative recency of Mr. Pearson's termination from Royal Canin, the time limitation for subsequent employers shall be limited only by the trial court's discovery deadlines.

To summarize the foregoing, this court grants discovery of:

1.    Wage and benefits information from Mr. Pearson's employers subsequent to Royal Canin. Social security numbers and any account numbers shall be redacted by the employers.

2.    Records from Mr. Pearson's prior and subsequent employers directly related to the duration of his employment, the reason(s) for his termination, any history of grievances or claims of discrimination, and his performance history.

Royal Canin shall tailor its subpoenas to conform to this order.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is:

ORDERED that plaintiff's motion to quash [Docket No. 21] is granted in part and denied in part in accordance with this opinion; and

27

ORDERED that plaintiff's motion to quash [Docket No. 27] is granted in part and denied in part in accordance with this opinion.

DATED this 11th day of September 2023.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge